UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO.: 5:13-CV-102

| | | |
|---|---|---|
| **DISABILITY RIGHTS NORTH CAROLINA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **FRYE REGIONAL MEDICAL CENTER, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** is before the Court upon Defendant Frye Regional Medical Center, Inc.'s Motion to Dismiss for Failure to State a Claim, filed on August 16, 2013. (Doc. 6). Plaintiff Disability Rights North Carolina filed a Memorandum in Opposition on September 3, 2013, and filed their Suggestion of Subsequently Decided Authority on September 16, 2013. (Docs. 9 and 10).

## I. BACKGROUND

Disability Rights of North Carolina ("DRNC") alleges that Frye Medical Regional Center, Inc. ("Frye Regional") refuses to provide records in violation of federal law. DRNC requests declaratory and injunctive relief under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. § 10801 *et seq*.

DRNC is North Carolina's duly-designated state Protection and Advocacy System ("P&A") for individuals with disabilities. 42 U.S.C. § 1080(b). DRNC is entrusted, empowered, and obligated to protect the civil rights of individuals with disabilities in the state of North Carolina. *Id.*; 29 U.S.C. § 794e(a)(1); 42 U.S.C. § 15041. Frye Regional is a healthcare provider located in Hickory, North Carolina. (Doc. 1 at 3).

On or about February 18, 2013, an individual with the initials C.L.H. was receiving treatment at Frye Regional and was involved in an altercation with staff. C.L.H. had been previously diagnosed with the mental illness of psychosis. This altercation resulted in Frye Regional staff putting C.L.H. into restraints. At some point in the altercation, C.L.H. suffered a fractured leg. On or about March 10, 2013, C.L.H. was evaluated for shortness of breath and chest pain. Tests revealed a large pulmonary embolus in C.L.H.'s right lung. On March 14, 2013, C.L.H. died in the Intensive Care Unit at Frye Regional.

On or about June 4, 2013, Frye Regional provided to DRNC a report of CLH's death as part of DRNC's regular protection and advocacy services and under requirements provided by state law. N.C. Gen. Stat § 122C-31(b), (d). Based on this report, DRNC determined that it had probable cause, as defined in 42 C.F.R. § 51.2, to believe that CLH's death may have resulted from abuse or neglect. Based on this probable cause determination, DRNC initiated an investigation into CLH's death under its federal authority provided under the PAIMI Act.

On June 27, 2013, DRNC notified Frye Regional in writing that would it would be investigating allegations concerning abuse or neglect and CLH's death. DRNC then requested a variety of documents from Frye Regional, including root cause analyses and other peer review records. The letter requesting these documents included the statutory basis for the request and asked that they be provided within 24 hours, as required by the PAIMI Act.

DRNC and Frye Regional agreed that the requested records would be provided by July 19, 2013. On July 22, 2013, DRNC received a disc that Frye Regional's counsel described as CLH's complete medical records. The disc did not contain internal investigation records that include root cause analyses and other peer review records. Frye Regional refuses to provide these

records on the basis of peer review privilege provided by North Carolina General Statute Section 131E-95(b).

## II. STANDARD OF REVIEW

"The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding such a motion, courts consider a plaintiff's well-pleaded allegations as true and view the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc., v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A motion under Rule 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Presley*, 464 F.3d at 483.

## III. ANALYSIS

Frye Regional argues that the Complaint should be dismissed because the records requested are protected under peer review privilege provided by North Carolina law and that this state law is not preempted by the PAIMI Act. Frye Regional's motion will be denied because the North Carolina's peer review privilege does not apply to DRNC's request for records. Further, the state law peer review privilege is preempted by the PAIMI Act.

### a. North Carolina Peer Review Privilege

North Carolina General Statute Section 131E-95(b) provides that "[t]he proceedings of a medical review committee, the records and materials it produces and the materials it considers" are confidential and "shall not be subject to *discovery* or *introduction into evidence* in any *civil action* against" a medical facility such as Frye Regional. (Emphasis added). Identical language

relating to peer review proceedings and records is found in North Carolina General Statute Section 122(C)-30(2).

The language of the statute clearly states that the privilege only applies where qualifying records are requested in a civil action for the purpose of discovery or for introduction into evidence. Here, DRNC's request for the records was not made in the midst of a civil lawsuit. DRNC requested the records in the limited context of their duty to investigate deaths of patients with mental illnesses. This duty is provided by federal law and the state of North Carolina has entrusted DRNC to carry it out. *Disability Rights N. Carolina v. Mem'l Hosp. Operating Corp.*, 1:11CV812, 2013 WL 179034 (M.D.N.C. Jan. 17, 2013)("DRNC's request does not implicate [North Carolina's peer review privilege], however, as DRNC has requested these records for use in a federally-authorized investigation, not in a civil action against a hospital.") This decision is bolstered by the fact that judges across the nation have come to similar conclusions when considering this question under similar state peer review privilege laws in the context of the PAIMI Act. *Prot. & Advocacy for Pers. with Disabilities v. Mental Health & Addiction Servs.*, 448 F.3d 119, 128 (2nd Cir. 2006)(authored by then-Judge Sotomayor)("[d]isclosure of peer review records is not absolutely prohibited, but prohibited only in the context of a civil action against a health care provider in certain circumstances.'); *Pennsylvania Prot. & Advocacy, Inc. v. Houston*, 228 F.3d 423 (3rd Cir. 2000)(authored by then-Judge Alito); *Ind. Prot. and Advocacy Servs. v. Ind. Family and Soc. Servs. Admin.*, 603 F.3d 365, 382-383 (7th Cir. 2010), cert. denied, 131 S. Ct. 2149 (2011); *Mo. Prot. & Advocacy Servs. v. Mo. Dep't of Mental Health*, 447 F.3d 1021, 1024 (8th Cir. 2006); *Ctr. for Legal Advocacy v. Hammons*, 323 F.3d 1262, 1272-73 (10th Cir. 2003).

Therefore, because the North Carolina peer review privilege does not apply to DRNC's request for records, Frye Regional's Motion to Dismiss will be denied.

### b. Preemption of State Law by PAIMI

Assuming that North Carolina's peer review privilege was an appropriate basis for Frye Regional to refuse to provide the requested records, this state law is preempted by the PAIMI Act.

Under the Supremacy Clause of the Constitution, state law is preempted by federal law in three circumstances. First, "Congress can define explicitly the extent to which its enactments preempt states law" through statutory language. *English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990). Second, where there is no explicit language statutory language, "state law is preempted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *Id*. Third, state law is preempted where it actually conflicts with federal law. *Id*.

Here, the PAIMI Act provides explicit statutory language demonstrating Congress's intent to preempt possible peer review privilege provided by state law. The PAIMI Act states:

> If the laws of a state prohibit an eligible system from obtaining access to the records of an individual with a mental illness in accordance with [42 U.S.C. § 10805(a)(4)] and this section [42 U.S.C. § 10806(b)(3(A)], section [42 U.S.C. 10805(a)(4)] and this section [42 U.S.C. § 10806(b)(3(A)] shall not apply to such system before – (i) the date such system is no longer subject to such prohibition; or (ii) the expiration of the 2-year period beginning on the date of the enactment of this Act [enacted May 23, 1986], whichever occurs first.

42 U.S.C. § 10806(b)(2)(C). In essence, this statutory language provides that state laws that prohibit access to records otherwise allowed under the PAIMI Act, "shall not apply" as of May 23, 1988. Section 10806(b)(2)(C) could not demonstrate Congress's intent in a clearer manner: after a two year grace period, any state laws barring access to records within the gambit of the PAIMI Act are preempted.

Frye Regional relies on subsequent legislative history and regulations issued to implement the PAIMI Act to argue that Congress did not intend for the PAIMI Act to preempt state law. (Doc. 5-1 at 6-7). Frye Regional points to a 1991 House Committee Report regarding the reauthorization of the PAIMI Act, which does state that it is the Committee's "intent that the Act does not preempt State law regarding disclosure of peer review/medical records relating to the proceedings of such committee. H.R. Rep. No. 102-319, at 6 (1991), reprinted in 1991 U.S.C.C.A.N. 777, 782. Frye Regional points to a Senate Report with language expressing similar concerns of peer review privilege under state law conflicting with the PAIMI Act. S. Rep. 102-114 (1991), reprinted in 1991 WL 142023, at *3-4. Finally, Frye Regional cites 42 C.F.R. § 51.41(c)(4), that states "nothing in this section is intended to preempt State law protecting records produced by medical care evaluation or peer review committees."

Fry Regional's argument, and the sources presented in support, fail to persuade this Court. As judges in the Second Circuit,[1] Third Circuit,[2] Seventh Circuit,[3] Eighth Circuit,[4] Tenth Circuit,[5] and the Middle District of North Carolina[6] have held, committee reports and

---

[1] *Prot. & Advocacy for Pers. With Disabilities v. Mental Health & Addiction Servs.*, 448 F.3d 119 (2nd Cir. 2006) ("[b]ecause we conclude that Congress has clearly spoken to the question of whether OPA may have access to . . . peer review records, we do not proceed to the second step of the *Chevron* analysis to determine whether the regulatory interpretation is a permissible construction of the statute. Where, as here, Congress has unequivocally expressed its intent, the statute controls.")

[2] *Pa. Prot. & Advocacy, Inc. v. Houston*, 228 F.3d 423 (3rd Cir. 2000).

[3] *Ind. Prot. & Advocacy Servs. v. Ind. Family and Soc. Servs. Admin.*, 603 F.3d 365, 382-383 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 2149 (2011).

[4] *Mo. Prot. & Advocacy Servs. V. Mo. Dep't of Mental Health*, 447 F.3d 1021, 1024 (8th Cir. 2006).

[5] *Ctr. For Legal Advocacy v. Hammons*, 323 F.3d 1262, 1272-73 (10th Cir. 2003).

[6] *Disability Rights N.C. v. Moses H. Cone Mem'l Hosp. Operating Corp.*, 1:11CV812, 2013 WL 4854316 (M.D.N.C. Sept. 11, 2013).

implementing regulations cannot reduce a statute's preemptive force where Congress has unequivocally expressed its intent. Congress did not make a corresponding amendment to the PAIMI Act to edit out the explicit language providing clear Congressional intent to preempt state law.

Additionally, even if the Court were to find no preemption provided by explicit statutory language, there is an actual conflict between the plain language of the PAIMI Act and peer review privilege provided by state law. The PAIMI Act gives DRNC the authority to investigate incidents of abuse and neglect of an individual with mental illness if there is probable cause to believe such incidents occurred. 42 U.S.C. § 10805(a)(1)(A). To achieve this this, the PAIMI Act provides that DRNC is entitled to "have access to all records of" the individual who was allegedly abused or neglected. 42 U.S.C. § 10895(a)(4)(A). By the terms of the PAIMI Act, the term "records" includes "reports prepared by any staff of a facility rendering care and treatment" and "reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury . . . that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents . . . ." 42 U.S.C. at § 10806(b)(3)(A).

Regardless of the applicability of North Carolina's peer review privilege to this matter, the state law is preempted by the PAIMI Act and Frye Regional's Motion to Dismiss is denied for this reason.

### IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant Frye Regional Medical Center, Inc.'s Motion to Dismiss is **DENIED.**

Signed: November 7, 2014

Richard L. Voorhees
United States District Judge